UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-14186-ALTMAN

JUSTIN W. SETTLE,

     *Plaintiff*,

v.

RICKY DIXON, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS, *et al.*,

     *Defendants*.

_____/

**ORDER**

Our Plaintiff, Justin W. Settle, has filed an amended civil-rights complaint under 42 U.S.C. §

1983. *See* Amended Complaint [ECF No. 13]. Settle, a state prisoner, alleges that the State of Florida

and three correctional officers—Sergeant Hernandez, Sergeant Yates, and Officer Cannado—violated

his "Eighth Amendment right to be free from cruel and unusual punishment" and his Fifth and

Fourteenth Amendment "right[s] to due process of law" when they failed to protect him from inmate

violence and denied him access to his prison's grievance system. *Id.* at 3. Settle suffered a "serious

back injury," "extreme chronic pain," "episodes of paralysis," and "emotional distress" as a result. *Id.*

at 16. Settle asks for compensatory and punitive damages and an order "provid[ing] [him] with an

interstate compact transfer" to another prison and "carbon cop[ies] [of] grievance forms[.]" *Id.* at

16–17. Settle also filed a motion for leave to proceed *in forma pauperis* ("IFP Motion") [ECF No. 14],

which we granted, *see* Order Granting IFP Motion [ECF No. 15].

After careful review, we find that Settle's Complaint may **PROCEED** on four Eighth

Amendment claims against Sergeant Yates and Officer Cannado, but we **DISMISS** his remaining

claims.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." 28 U.S.C. § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

The Federal Rules of Civil Procedure require, in relevant part, that a well-pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Every pleading . . . must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In this Court, a civil-rights complaint submitted by a *pro se* prisoner "must be signed under penalty of perjury." S.D. FLA. L.R. 88.2; *see also* FED. R. CIV. P. 11(a) ("*Unless a rule or statute specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." (emphasis added)). Additionally, "complaints must substantially follow the form, if any, prescribed by the Court." S.D. FLA. L.R. 88.2(a).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

2

Courts may dismiss a plaintiff's complaint for failure to comply with the Federal Rules, the Local Rules, or court orders. *See, e.g.*, *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) ("The court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). And *pro se* litigants are not exempt from procedural rules. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *see also Heard v. Nix*, 170 F. App'x 618, 619 (11th Cir. 2006) ("Although *pro se* complaints must be liberally construed, such complaints still must comply with the procedural rules governing the proper form of pleadings." (cleaned up)); S.D. FLA. L.R. 1.1 ("When used in these Local Rules, the word 'counsel' shall be construed to apply to a party if that party is proceeding pro se."). The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### ANALYSIS

Settle asserts seven constitutional claims in his Amended Complaint. He brings *two* counts of failure-to-protect under the Eighth Amendment against Sergeant Yates and Officer Cannado in their individual capacities for "paying or offering to pay" an inmate "to stab" him. Am. Compl. ¶ 4. He advances *two* more failure-to-protect claims against those same Defendants for "paying [another] inmate . . . to rape" him. *Id.* ¶ 8. He asserts *one* failure-to-protect claim against Sergeant Hernandez in

3

his individual capacity for "failing to report [Settle]'s request for protection." *Id.* ¶ 6. We've liberally construed *one* failure-to-protect claim against the Secretary of the Florida Department of Corrections ("FDOC"), Ricky Dixon, in his official capacity.[1] *See id.* at 16. Lastly, he asserts a Fourteenth Amendment due-process claim against Secretary Dixon for "design[ing]" a "rigged [and] fraudulent grievance system for the purpose of hindering litigation[.]" *Id.* ¶ 14 (cleaned up). We'll address each claim in turn.

### I.        The Failure-to-Protect Claims

"An official's deliberate indifference to a known danger violates an inmate's Eighth Amendment rights." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995). Those dangers include inmate-on-inmate violence, as the Eighth Amendment "imposes [a] dut[y] on [prison] officials" to "take reasonable measures to guarantee the safety" of prisoners to "protect [them] from violence at the hands of other[s]." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (recognizing that an inmate "has a constitutional right to be protected . . . from physical assault by other inmates"). But not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

"To prevail on [a failure-to-protect] claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) a

---

[1] Although Settle doesn't outright state a failure-to-protect claim against Secretary Dixon, Settle asks us to "order . . . [Secretary] Dixon" to let Settle transfer to a prison of his choosing in order to "protect [him] from [a] state-wide hit that has been placed on [him] by very powerful [inmate] security threat groups." Am. Compl. ¶ 16. In other words, he's asked the FDOC for injunctive relief tied to Secretary Dixon's alleged failure to protect him from inmate violence. We'll therefore construe a claim for prospective injunctive relief against Secretary Dixon in his official capacity. *See, e.g.*, *Schwindler v. Comm'r, Ga. Dep't of Corr.*, 605 F. App'x 971, 971–72 (11th Cir. 2015) (reviewing a prisoner's claim for "prospective injunctive relief against the Commissioner of the Georgia Department of Corrections in his official capacity based on the *Ex parte Young* doctrine" (citing *Ex parte Young*, 209 U.S. 123 (1908) (allowing suits for declaratory or injunctive relief against state officers in their official capacities))).

causal connection between the defendant['s] conduct and the Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (citing *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)). The first element—a substantial risk of serious harm—"is evaluated using an objective standard." *Ibid.* (citing *Caldwell*, 748 F.3d at 1099). There must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

In our Circuit, the second element—deliberate indifference—requires that the defendant "acted with subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citation omitted). In other words, the prisoner must show that the defendant was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Ibid.* And even if the defendant "actually knew of a substantial risk to inmate . . . safety," he can't be liable under the Eighth Amendment "if he responded reasonably to that risk." *Ibid.* (citation omitted).

### a.      The Claims Against Sergeant Yates and Officer Cannado

**The Stabbing Claims**. We'll start with Settle's two counts of failure-to-protect against Yates and Cannado for allegedly paying an inmate to stab him.[2] Settle tells us that, on January 10, 2025, he was "place[d] in confinement" after a corrections officer, Sergeant Miller, "alleged that [Settle] pushed him over a table." Am. Compl. ¶ 2. An inmate named Flash later "moved into [Settle's] cell" and, on

---

[2] Our Circuit, in at least one unreported opinion, has treated this kind of claim as invoking the Eighth Amendment's deliberate-indifference (rather than excessive-force) standard. *Davis v. Hodges*, 481 F. App'x 553, 554 (11th Cir. 2012) (invoking the Eighth Amendment's "deliberate indifference" test for a prisoner's § 1983 claim "based on . . . prison officers' purported conspiracy to have another inmate assault him, incitement of that inmate to assault him, and allowing the inmate to assault him"); *see also Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (construing the plaintiff's claim "that Deputy Marin intended to do harm to Mr. Northington by inciting inmates to beat him" under an Eighth Amendment failure-to-protect theory).

January 27, 2025, "attacked [Settle] with a knife type of weapon" during lunch. *Id.* ¶ 3. Settle "was able to take possession of the weapon," though he "suffered a head injury." *Ibid.* Settle then "interrogated . . . Flash" about his "motive for attacking" him. *Ibid.* Flash told Settle that "Sergeant Yates and Officer Cannado offered to pay him a pack of cigarettes to stab [Settle] . . . in retaliation for [Settle] allegedly pushing Sergeant Miller over a table." *Ibid.*

Settle has stated plausible failure-to-protect claims against both Yates and Cannado. As for the first element, Settle has alleged a substantial risk of serious harm—getting stabbed by a fellow inmate. *See Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) ("[A]n excessive risk of inmate-on-inmate violence can constitute a substantial risk of serious harm."); *Woodyard v. Ala. Dep't of Corr.*, 700 F. App'x 927, 933 (11th Cir. 2017) ("As to the first element, a substantial risk of serious harm existed once the assault began: Woodyard was being assaulted with a knife by a fellow inmate."); *Davis v. Stewart*, 2023 WL 2656550, at *12 (S.D. Ala. Mar. 27, 2023) ("Here, there is no question that being stabbed with a knife by another inmate created a substantial, objective risk of injury to Davis.").

And Settle plausibly pleads the second element: deliberate indifference. He says that Flash told him that Yates and Cannado offered to compensate Flash if Flash would stab him in retaliation for his alleged assault on a correctional officer. At this stage, we must accept this allegation as true. Yates and Cannado were thus "actually, subjectively aware that [their] own conduct caused a substantial risk of serious harm" to Settle when they arranged the attack and did nothing to stop it. *Wade*, 106 F.4th at 1262. Their "failure to intervene," despite knowing Settle faced an imminent stabbing, "offend[s] evolving standards of decency" and "rise[s] to the level of a constitutional tort." *Brown*, 894 F.2d at 1537 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)); *see also Farmer*, 511 U.S. at 833 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."); *cf. Harmon v. Berry*, 728 F.2d 1407, 1408 (11th Cir. 1984) (finding a plaintiff's deliberate-indifference allegations were plausible where he alleged that "prison officials . . . expos[ed]

6

him to inmate retaliation" by transferring an inmate on whom the plaintiff had "snitch[ed]" to his facility and "engendering . . . hostility to[ward] [the plaintiff] among inmates" by blaming him for penalties that other inmates had received (cleaned up)); *Jones v. St. Lawrence*, 2008 WL 5142396, at \*5 (S.D. Ga. Dec. 5, 2008) (listing circuit cases for the proposition that "inciting other inmates to harm a prisoner . . . has the potential for great harm and may constitute a violation of the Eighth Amendment").

Lastly, Settle has adequately pled causation. The Eleventh Circuit has said that a prisoner's claim that officers legitimately "expos[ed] him to inmate retaliation" is "sufficient to carry [a] [deliberate-indifference] cause of action through the service of process stage." *Harmon*, 728 F.2d at 1409; *see also Jones*, 2008 WL 5142396, at \*5 (same). That's the case here. When we accept as true the allegations that Yates and Cannado offered to pay Flash with a pack of cigarettes to stab Settle—and that Flash then tried to carry out the stabbing, injuring Settle in the process—we think it reasonable to infer that their conduct caused Settle's injuries. *See, e.g.*, *Gillespie v. Hazen*, 2020 WL 1933130, at \*5 (N.D. Ala. Mar. 4, 2020) (finding that the plaintiff plausibly alleged that the "physical harm he suffered" was caused by an officer who "offered e-cigarettes to several of the inmates if they would 'jump on' the plaintiff" (cleaned up)), *report and recommendation adopted*, 2020 WL 1929433 (N.D. Ala. Apr. 21, 2020); *Glover v. Ala. Dep't of Corr.*, 734 F.2d 691 (11th Cir. 1984) (agreeing that a prison official's statement to a group of inmates that a particular inmate's life was worth "five or six packs of cigarettes" was the proximate cause of an attack on the inmate the following day), *vacated on other grounds by Ala. Dep't of Corr. v. Glover*, 474 U.S. 806 (1985); *see also Irving v. Dormire*, 519 F.3d 441, 450 (8th Cir. 2008) (holding that "a guard may not threaten an inmate with death by means of arming, bribing, and inciting other inmates to accomplish that which the guard may not do directly"); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (saying that, "[w]hen an inmate is able to prove" that an officer "intended to do harm to [him] by inciting inmates to beat him," "it is as if the guard himself inflicted

the beating as punishment"). We'll therefore allow Settle to **PROCEED** to service on his failure-to-protect claims against Yates and Cannado for bribing an inmate to stab him.

**The Sexual-Assault Claims**. We turn, next, to Settle's failure-to-protect claims against Yates and Cannado for bribing an inmate "to rape" him. Am. Compl. ¶ 7. Settle says that, on February 2, 2025, an inmate named White told him "that Sergeant Yates and Officer Cannado paid him a pack of cigarettes to rape [Settle], in retaliation for [Settle] allegedly pushing Sergeant Miller over a table." *Ibid.* Then, White "grabbed [Settle]'s buttock and attempted to pull [Settle] toward him." *Ibid.* Settle resisted, and the situation "escalated . . . to very intense combat." *Ibid.* At one point, White "slammed [Settle]'s body on a toilet causing a very serious back injury." *Ibid.* White died; his body was found the next day. *Ibid.* When White's "affiliates" learned of his death, they directed "death threats" at Settle, which led prison officials to secure Settle in a separate wing. *Ibid.* While Yates and Cannado "assisted" in moving Settle, Cannado told Yates: "We should have just stomped his skull in ourselves and we wouldn't be in this mess." *Ibid.*

Here, too, Settle has plausibly alleged failure-to-protect claims against Yates and Cannado. For starters, Settle has pled a substantial risk of serious harm: the risk of being raped by a fellow inmate who was paid by officers to perpetrate the sexual assault. It's true that the Eighth Amendment's prohibition against cruel and unusual punishments "necessarily excludes from constitutional recognition *de minimis* uses of physical force"—provided that "the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). But "[s]exual abuse is repugnant to contemporary standards of decency[.]" *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003); *see also Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) ("Sexual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm."). And so, "[a] prisoner has a right to be protected from . . . sexual assault." *LaMarca v. Turner*, 662 F. Supp. 647, 662 (S.D. Fla. 1987); *see also Farmer*, 511 U.S. at 833 (saying, in a case involving the sexual assault of a

prisoner, that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners"). We therefore find that Settle has alleged a substantial risk of serious harm.

Moving to the second element, Settle again plausibly alleges deliberate indifference. As with the stabbing claims, he says inmate White told him that, in retaliation for Settle's alleged assault on Sergeant Miller, Yates and Cannado offered to compensate White if White would rape Settle. White later tried to carry out the rape, and Settle alleges that Yates and Cannado knew Settle faced that risk— as evidenced by Cannado's remark during the security transfer that they "should have just stomped [Settle's] skull" themselves. Am. Compl. ¶ 7. On these facts, Yates and Cannado were "actually, subjectively aware that [their] own conduct caused a substantial risk of serious harm" to Settle when they incited sexual violence against him. *Wade*, 106 F.4th at 1262; *see also Green v. P.R.E.A.*, 2019 WL 8108738, at *2 (S.D. Ga. Nov. 21, 2019) (finding that officers were "subjectively aware of a substantial risk of serious harm" where they "specifically acknowledged" the "threat of rape and further sexual assault" to the plaintiff but "instructed [him] to 'let it happen'[ ] and laughed when [another] inmate made violently suggestive motions toward [the] plaintiff" (cleaned up)), *report and recommendation adopted*, 2020 WL 974393 (S.D. Ga. Feb. 28, 2020).

Lastly, Settle also plausibly pleads causation. At this stage, he need only show "that a correctional officer has endangered his life by exposing him to a real threat of inmate retaliation[.]" *Jones*, 2008 WL 5142396, at *5 (quoting *Harmon*, 728 F.2d at 1409). He easily meets that standard. He says that Yates and Cannado offered to pay inmate White with "a pack of cigarettes to rape" him, prompting White to try to carry out the rape and leading to a fight that left Settle with "a very serious back injury." Am. Compl. ¶ 7. That's enough to plausibly allege that the offer of payment proximately

caused Settle's injuries.[3] So, we'll also allow Settle's additional failure-to-protect claims against Yates and Cannado for bribing an inmate to sexually assault him to **PROCEED** to service.[4]

### b.     The Claim Against Sergeant Hernandez

Turning to Settle's failure-to-protect claim against Sergeant Hernandez, Settle tells us that, after his fight with Flash, he "was seen by medical [and] returned" to his cell. Am. Compl. ¶ 5. Meanwhile, Flash had been "moved to another cell." *Ibid.* Settle told Hernandez that "Sergeant Yates and Officer Cannado pa[id] Flash to stab" him. *Ibid.* He also told Hernandez that he "was in fear for his life" and asked "that Sergeant Hernandez place him under protective status and provide him with a witness statement." *Ibid.* But Hernandez didn't do that. Instead, he told Settle, "If you say anything else about it, I'm going to put you on strip," which apparently meant that Hernandez would "take all of [Settle's] clothing and bedding[.]" *Ibid.* Settle says that Hernandez violated his Eighth Amendment right "by failing to report [his] request for protection." *Id.* ¶ 6.

Settle's failure-to-protect claim fails because he hasn't sufficiently pled causation. A § 1983 plaintiff must show that the officer's conduct was the "but-for" cause of his injuries. *Smith v. City of Oak Hill*, 587 F. App'x 524, 527 (11th Cir. 2014) (per curiam). "But-for" causation exists when a plaintiff shows that, "except for the constitutional tort, such injuries and damages would not have occurred." *Ibid.* The problem with Settle's claim is that he never ties Hernandez's failure to place him on protective status to any kind of injury. The only subsequent injury he identifies is the back injury

---

[3] To show proximate cause in a constitutional-tort case, a plaintiff must allege that "the injury or damage was a reasonably foreseeable consequence of the [officer's] act or omission." *Jackson v. Sauls*, 206 F.3d 1156, 1168 n.16 (11th Cir. 2000). Settle does allege that he "resist[ed]" the sexual assault, and that his back injury stemmed from the ensuing "intense combat" with White. Am. Compl. ¶ 7. At this stage, though, we assume without deciding that those injuries were a reasonably foreseeable consequence of Yates's and Cannado's payment offer. A jury can (and ordinarily should) sort out proximate causation if the case reaches summary judgment. *See Goines v. Lee Mem'l Health Sys.*, 2019 WL 497706, at *7 (M.D. Fla. Feb. 8, 2019) (Steele, J.) ("[T]he presence of the requisite causation in a case brought under 42 U.S.C. § 1983 is normally a question of fact for the jury." (cleaned up)).

[4] Settle doesn't allege that Yates and Cannado entered into a conspiracy to violate his constitutional rights, *see generally* Am. Compl., so we won't construe a conspiracy claim from the Amended Complaint.

he suffered when White tried to sexually assault him. Settle seems to want us to assume that, had Hernandez placed him on protective status and taken his statement, Yates and Cannado wouldn't have been able to incite White to attack him. "That, however, requires the Court to assume facts not pled in the complaint," and we can't do that. *Monaco Exch., Inc. v. SJ Int'l Brokers, LLC*, 2012 WL 12868294, at *2 (S.D. Fla. Nov. 28, 2012) (King, J.). Because Settle hasn't linked Hernandez to any injuries he suffered, he fails to state a claim against him. We therefore **DISMISS** Settle's failure-to-protect claim against Sergeant Hernandez.

### c.       The Claim Against Secretary Dixon

We'll briefly address Settle's official-capacity claim for injunctive relief. As we said, we've liberally construed an official-capacity claim against Secretary Dixon under the doctrine of *Ex parte Young* for Dixon's alleged failure to protect Settle from inmate violence. *See* Am. Compl. at 16. "[T]he *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law," *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (citations omitted), and "where the equitable relief sought 'implicates special sovereignty interests[,]'" *ibid.* (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997)). The former limitation means that "a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Summit Med. Assocs.*, 180 F.3d at 1337 (citing *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)). The latter means that, "if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred by the Eleventh Amendment." *Ibid.*

Settle specifically asks for "an order on Ricky Dixon[ ] to provide [him] with an Interstate Compact Transfer to one of the three states of [Settle]'s choice [in order] to protect [Settle] from the 'state wide' hit that has been placed on [him] by very powerful [inmate] security threat groups." Am. Compl. at 16. We needn't address whether Settle has alleged an ongoing violation of federal law because we think the prospective relief he's seeking—an order allowing his transfer to a prison of his

choice—impermissibly intrudes on the State's sovereignty. Federal courts generally don't tell state prison authorities *where* to house their prisoners. *See Meachum v. Fano*, 427 U.S. 215, 228–29 (1976) (recognizing that "federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States," and noting that "prison officials have the discretion to transfer prisoners for any number of reasons"); *Newman v. Alabama*, 683 F.2d 1312, 1320 (11th Cir. 1982) (holding that "[a] federal court . . . must recognize that it is ill-equipped to involve itself intimately in the administration of the prison system" and observing that "[d]eference to prison authorities is especially appropriate when state penal facilities are involved"). Because we won't tell the State where to house Settle, we **DISMISS** his official-capacity claim against Secretary Dixon.

## II.      The Due-Process Claim

Lastly, we dismiss Settle's Fourteenth Amendment due-process claim against Secretary Dixon.[5] On February 5, 2025, Settle "was transferred . . . from Okeechobee Correctional Institution to Florida State Prison." Am. Compl. ¶ 16. "[B]etween February 7, 2025[,] and February 13, 2025[,]" Settle submitted "informal grievances" about his claims against Yates, Cannado, and Hernandez and new threats "from Florida State Prison [o]fficers." *Id.* ¶ 9. After receiving "no response," Settle filed "four separate formal grievances" over the "same issues," to which he also "received no response[.]" *Id.* ¶ 10. He "submitted four separate grievance appeals to Ricky Dixon," who "returned" Settle's appeals "without action," saying that Settle hadn't either "first submit[ted] [his] grievance at the appropriate level at [his] institution" or "provided [the State] with a copy of [his] informal grievance[.]" *Id.* ¶ 12. Settle claims that Secretary Dixon violated his due-process rights by "design[ing] . . . a rigged" "grievance system for the purpose of hindering litigation[.]" *Id.* ¶ 14.

---

[5] Settle also sues Secretary Dixon under the Fifth Amendment, but that amendment's due-process protections run only against the federal government—not state officials. *See Davidson v. City of New Orleans*, 96 U.S. 97, 99 (1877) (explaining that the Fifth Amendment "is a limitation on the powers granted by [the Constitution] to the Federal government[ ] and not a restraint upon the States").

Settle's due-process claim simply isn't cognizable under § 1983. The Eleventh Circuit has squarely held that "an inmate has no constitutionally-protected liberty interest in access to [a prison's grievance] procedure." *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (listing cases); *see also Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." (citations omitted)). Because Settle lacks a constitutionally protected interest in his state prison's grievance process, his due-process claim against Secretary Dixon for maintaining an allegedly inaccessible system fails to state a claim under § 1983. We thus **DISMISS** Settle's due-process claim against Secretary Dixon.[6]

\* \* \*

Having screened the Amended Complaint [ECF No. 13] under 28 U.S.C. § 1915(e) and § 1915A, we **ORDER AND ADJUDGE** as follows:

1. Justin W. Settle's failure-to-protect claims for damages against Sergeant Yates and Officer Cannado in their individual capacities shall **PROCEED** to service.

2. Settle's remaining claims are **DISMISSED**. *See* 28 U.S.C. § 1915A(b). The Clerk shall **TERMINATE** Sergeant Hernandez and Secretary Ricky Dixon as parties to this case.

3. Since Settle is proceeding *in forma pauperis* [ECF No. 15], we'll direct the U.S. Marshal's Service to serve Sergeant Yates and Officer Cannado by separate order.

4. This case shall remain administratively **CLOSED**. Any party may move to reopen the case once the Defendants have been served.

---

[6] Since we're dismissing Settle's due-process claim, we're also dismissing his second and last request for injunctive relief—which asks for an order requiring Secretary Dixon "to implement the use of carbon copy grievance forms." Am. Compl. at 17. Settle can thus only proceed on his plausible claims for money damages. *Id.* at 16.

**DONE AND ORDERED** in the Southern District of Florida on May 20, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      Justin W. Settle, *pro se*